THE OAKLAND COTTON MANUFACTURING CO., Respondent, v. JOHN G. JENNINGS, Appellant.

No. 2380; March 8, 1872.

**Shipping—Who Liable on Contracts of Affreightment.**—A person who charters a vessel, and by the terms of his contract as well as in fact assumes the exclusive possession, command and navigation of the vessel, whether for a particular voyage or an indefinite time, is the owner pro hac vice, and alone responsible upon contracts of affreightment.

**Shipping.—In the Respect of Responsibility upon Contracts of** affreightment, after the owner of a vessel has let the latter to the master, the same law governs as would govern in the case of a letting to a stranger.

**Shipping.—The Exemption from Liability Enjoyed by the Owner** of a vessel for acts or omissions of a charterer, by which a bailor is aggrieved, or of a master assuming a relation to the owner similar to that of a charterer, is not lessened by the fact that under their contract the owner is to bear the expense of the vessel's repairs.

APPEAL from Third Judicial District, Alameda County.

Botts & Wise for respondent; Milton Andros and McAllister & Bergin for appellant.

See Oakland Cotton Mfg. Co. v. Jennings, 46 Cal. 176, 13 Am. Rep. 209.

NILES, J.—The defendant, a shipbuilder, was the general and registered owner of the schooner "Greenfield." While so

the owner he appointed one Horton master. Subsequently he entered into an agreement with Horton, by which it was agreed that Horton was to have the entire control and possession of the schooner, to make all contracts in regard to the freighting and business, to engage her in any business he might desire within the inland waters of this state, to victual, man and run her at his own expense, and was to collect all the earnings and freight moneys, and pay to defendant one-third of the gross earnings at the end of each and every month, or as often as a settlement was had between them; the defendant to keep the schooner seaworthy and in repair. Subsequently Horton entered into a partnership with one Finney in the running of the schooner, and Horton and Finney made all contracts in regard to her business, and employed her as they saw fit and proper, and had entire and exclusive possession and control of her.

The plaintiff contracted with Finney, acting for himself and Horton, to carry certain goods. Owing to negligent stowage the schooner capsized and the goods were lost.

The case was tried by a jury. The counsel for defendant asked the court to give to the jury the following instruction: "If you shall find that the schooner 'Greenfield' was at the time of the accident employed under agreement with defendant by Captain Horton, the master thereof, on shares, and that Captain Horton at that time manned and victualed said vessel at his own expense, and paid all expenses of running her except for repairs, and employed her in carrying freight, he collecting the freight money and accounting to the owner only for the share of the latter, and that said Horton had at the time, by virtue of said agreement, exclusive possession and control of her, your verdict will be for the defendant."

The court refused this instruction, and upon its own motion instructed the jury "that no arrangement that may exist between the general owner and charterer of his vessel as to the employment and custody of the vessel can affect third parties dealing with the master or charterer of the vessel, unless it is shown that they had received notice of such arrangement."

These rulings are assigned by the defendant as error.

There is no doubt that the charterer of a vessel, who has by the terms of his contract, and assumes in fact, the exclusive possession, command and navigation of the vessel, either for a particular voyage or for an indefinite time, is the owner pro

hac vice, and is alone responsible upon contracts of affreightment.

I think the same exemption of the general owner from liability attaches to a contract made between him and the master appointed by him as to a similar contract made with a charterer. Upon· this point the authorities are conflicting. The weight of authority favors the principle that the rights and liabilities of the parties are the same whether the vessel is let to the captain or to a stranger.

The owner has no control over the vessel, or its voyages, or the terms. or parties to the affreightment contracts. He can neither sanction nor repudiate any act of the charterer or remove him at will. There is no relation of principal and agent existing between them.

It is not essential that third parties should have notice of the chartering to relieve the owner from personal liability. A charter-party is not a conveyance which is required to be recorded, to impart notice to third parties as to the personal liability of the owner: Mett v. Ruckman, 3 Blatchf. (C. C.) 71, Fed. Cas. No. 9881; 3 Kent Com. 134; Reeve v. Davis, 1 Ad. & El. 312, 110 Eng. Reprint, 1224.

In the latter case it was said by Mr. Justice Littlefield that the registry acts did not necessarily show who were the owners liable for repairs; that they were not passed for this purpose; that this works no hardship to the tradesman, for "he has always the means of knowing who are substantially the owners by asking the captain to show the charter-party; if this is refused, he may decline dealing."

It is urged by counsel for respondent that the defendant in this case had not parted with the entire possession and control of the schooner, because by the terms of the charter-party Horton could only engage her within the inland waters of the state, and the defendant was to keep her in repair. I do not see in what these agreements differ in principle from the ordinary covenants of a lease of a store-building, which prohibit the storage of extrahazardous goods and reserve the right of the landlord to enter and make repairs.

In my opinion there was error both in the instruction given and in the refusal to give the instruction asked by the defendant.

Judgment reversed and cause remanded.

.We concur: Wallace, C. J.; Rhodes, J.; Crockett, J.